**UNITED STATES v. WAIN.**

No. 196, Docket 20479.

Circuit Court of Appeals, Second Circuit.
June 11, 1947.

S. Paul Fishman, of Brooklyn, N. Y.
(Henry G. Singer, of Booklyn, N. Y., of
counsel, and Harry Silver, of Brooklyn,
N. Y., on the brief), for appellant.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Mario Pittoni, Asst. U. S. Atty., of Brooklyn N. Y., of counsel), for the United States.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The defendant Wain was indicted and tried under Count 2 of an indictment reading as follows:

Leslie Murray Wain, Jesse Norden, Irving Weintraub, and Universal Camera Corporation, hereinafter called the defendants beginning on or about the 15th day of May, 1944 and continuing thereafter up to December 18, 1944, both dates inclusive, in the County of Queens, City, State and Eastern District of New York, within the jurisdiction of this Court, did unlawfully, wilfully and knowingly omit and refrain from disclosing to the Local Board duly exercising jurisdiction of defendant, Leslie Murray Wain, for service under the provisions of the Selective Training and Service Act of 1940, as amended, and the rules regulations and directions made pursuant thereto said defendant, Leslie Murray Wain, being then and there a person duly registered pursuant to the Selective Training and Service Act of 1940 (Title 50, Appendix, United States Code, Sections 301–318 [50 U.S. C.A. Appendix, §§ 301–318]), as amended, the Proclamation of the President of the United States duly issued and promulgated pursuant to said Act, and the Regulations duly issued and promulgated pursuant to said Act; that is to say: during the aforesaid period said defendants wilfully, knowingly and deliberately omitted and refrained from disclosing to the Local Board duly exercising jurisdiction in that behalf, the fact that said defendant, Leslie Murray Wain, was not from September 3, 1944 to December 18, 1944 employed by the Universal Camera Corporation, and that the employment of said Leslie Murray Wain, had terminated on or about September 3, 1944; against the peace and dignity of the United States and contrary to the form of the statute in such case made and provided (Title 50, United States Code, Appendix, Section 311 [50 U.S.C.A. Appendix, § 311])." [1]

The defendants Jesse Norden, Irving Weintraub and Universal Camera Company were severed from the indictment so that Wain was tried alone.

The defendant Wain waived a jury and was tried before Judge Abruzzo. After judgment of conviction and a sentence to six months imprisonment, on motion of the government the indictment was dismissed as to the other defendants.

The question before us is whether Wain —who had been classified by the local board

---

[1] § 311. "Offenses and punishment

"Any person charged as herein provided with the duty of carrying out any of the provisions of this Act, or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty, and any person charged with such duty, or having and exercising any authority under said Act, rules, regulations, or directions who shall knowingly make, or be a party to the making, of any false, improper, or incorrect registration, classification, physical or mental examination, deferment, induction, enrollment, or muster, and any person who shall knowingly make, or be a party to the making of, any false statement or certificate as to the fitness or unfitness or liability or non-liability of himself or any other person for service under the provisions of this Act, or rules, regulations, or directions made pursuant thereto, or who otherwise evades registration or service in the land or naval forces or any of the requirements of this Act, or who knowingly counsels, aids, or abets another to evade registration or service in the land or naval forces or any of the requirements of this Act, or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations made pursuant to this Act, or any person or persons who shall knowingly hinder or interfere in any way by force or violence with the administration of this Act or the rules or regulations made pursuant thereto, or conspire to do so, shall, upon conviction in the district court of the United States having jurisdiction thereof, be punished by imprisonment for not more than five years or a fine of not more than $10,-000, or by both such fine and imprisonment, * * * "

in Class II-B because found to be a "necessary man" in war production, or found by reason of his occupation to be "making a contribution" to war production—failed to report to the local board in writing any fact that might result in his being placed in a different classification. The pertinent Selective Service Regulations are set forth below.[2]

Wain registered with his local board on October 16, 1940, and on January 10, 1941, stated in his questionaire that he was born on August 23, 1913, was married, and had one son and (in his affidavit) that he had worked as a traveling salesman for New York Merchandising Company since March 1933. On January 20, 1941, he was classified III-A. In a letter of August 31, 1943, the chairman of his board wrote him that if he was engaged in an activity that contributed to the war effort and claimed deferment because of it Form 42A must be furnished by his employer. He replied to the chairman—by letter of September 3— that he was employed by the New York Merchandising Company which held 50% of the stock of the Universal Camera Company, hereinafter termed "Universal." He had then been working for the Merchandising Company as manager of its China and Rug Department for about two years at a salary of $75 per week. Apparently, because the board regarded the Merchandising Company as not contributing to the war effort, it reclassified him in I-A as available for military service. On November 1, 1943, he wrote the local board that he was start-

ing to do war work for Universal which had begun to turn out binoculars for the Army, Navy, Marines and Canadian Government, and on November 26, 1943, after a hearing, he was reclassified in II-A because of his war work with Universal. On May 24, 1944, the board reclassified him in II-B for a period expiring on November 22, 1944, and so notified him and Universal.

When Wain went to work for Universal he was employed on its night shift from 3:30 P. M. to 12 M. as a supervisor of the assembly prism line, but continued working during the day with the Merchandising Company, where his hours were reduced from forty to twenty-seven, and his salary from $75 to $50.

In the middle of July 1944, defendant left Universal on temporary sick leave, but retained his pob with the Merchandising Company, where he again worked forty hours per week and received a salary of $75 a week. On August 8, 1944, he returned to Universal and worked there until September 2, 1944. During this last period of work for Universal his working hours for the Merchandising Company were again reduced to twenty-seven hours and his salary from the latter to $50 per week. On September 2, 1944, he left Universal because there was no work for him, and he was not reemployed by it until December 18, 1944. During that interval he again worked forty hours per week for Merchandising Company at $75 a week. While working for Universal he testified at a hearing on December 20, 1944 that he received from

<hr/>

[2] 622.22 Class II-B: Necessary man in war production. (a) In Class II-B shall be placed any registrant who is found to be a "necessary man" in war production. (8 F.R. 11346).

(b) In Class II-B shall be placed any registrant who by reason of his occupation is found to be "making a contribution" to war production and who is:

(1) Age 38 or over, or

(2) Age 18 through 37, and

(A) Who is found to be qualified for limited military service only, or

(B) Who is found to be disqualified for any military service. (This shall be deemed to include every registrant who would be placed in Class I-C, Class IV-C, or in Class IV-F if it were not for the fact that he qualifies for classification in Class II-B under the provisions of this section.) (9 F.R. 4385.)

622.24 "Necessary man" defined. A registrant shall be considered a "necessary man" only when all of these conditions exist: (1) He is, or but for a seasonal or temporary interruption would be, engaged in war production or in support of the war effort; (2) his removal would cause a serious loss of effectiveness therein; (3) he cannot be replaced; and (4) he meets such other conditions and qualifications as may be prescribed from time to time by the Director of Selective Service. (9 F.R. 4385.)

626.1 Classification not Permanent. (a) No classification is permanent.

(b) Each classified registrant shall, within 10 days after it occurs, * * * report to the local board in writing any fact that might result in the registrant being placed in a different classification. (6 F.R. 6843.)

them from $38 to $41 per week. He admitted that he worked for Universal to obtain deferment from military service.

According to the testimony of FBI agent Monticone, Wain told him that he knew he should advise his local board that he was no longer employed by Universal after September 2, 1944, but he "expected to be called back to work at any time, and therefore did not advise his board."

While Wain said at one time during the trial that he was "tired, weak, fatigued" and obtained a doctor's certificate in December 1944 that he had "had a nervous breakdown," was advised to rest and was still under the doctor's care, yet he thereupon returned to work with Universal, worked there until August 1945, and his attorney stated to the court that he was not sick during that period but that "the story of sickness is something that was invented by somebody else and imputed to him * * *" (fols. 260, 261). His work with Universal terminated September 2, 1944, when the contract of that company with the government—on which he was working —was completed. He did not notify the local board when he ceased to work for Universal on September 2, 1944 and after being advised by Universal that he had been forced to take a leave of absence owing to ill health the local board wrote him on December 11, 1944, that they did "not see anything else to do, under these circumstances but to reclassify you to Class I-A and send you to the induction center for a physical examination. Under Selective Service Rules and Regulations you should have advised this board of your change in status."

■ Under such circumstances there was ample ground for inferring that Wain did not report his change of status to the local board after September 2, because he feared loss of his II-B classification. His neglect to notify the board for such a long period as two and one-half months, coupled with his attempt to excuse his failure by submission of a false doctor's certificate, justified a finding that he knowingly violated Regulation 626.1(b) requiring a report in writing of any fact that might result in his

being placed in a different classification. It is significant that his own attorney stated that during the period between September 2 and December 18, 1944, he was not sick (fol. 261).

Wain's defense is based: (1) on the contention that Regulation 626.1(b) only imposed a conditional duty which in view of the Selective Service Bulletins issued in 1944 did not exist in his case because there was no probability that his cessation of employment in war work with Universal would have resulted in any change of classification; (2) on the fact that though he had left Universal on September 2, 1944 he remained on a replacement schedule and thus was "still connected with the company" (fol. 138) so as to be constructively engaged in a war activity; (3) on failure of the prosecution to show that the defendant's neglect was knowing and wilful.

The Army Bulletins were "restricted, confidential" information by the New York City Headquarters of the Selective Services to local boards that in the New York locality the army was not then in immediate need of men over thirty years of age, that the Army preferred younger men for military service, and that such men were then available in sufficient numbers. Consequently, the local boards were informed that men over thirty might be granted an occupational deferment if they were "filling a useful job in an activity reasonably necessary for the legitimate needs of the community." Bulletin No. 116, May 17, 1944, V.

■ In our opinion the bulletins were not intended to relieve men who had registered and obtained a classification deferring them—because engaged in war work—from notifying the local boards of facts which might result in their being placed in a different classification and in having their deferment terminated or prolonged on the ground that they were engaged in an occupation which, though not strictly for defense, was "an activity reasonably necessary for the legitimate needs of the community."[3] If terminated he might be classified in I-A and if prolonged in II-A.

---

[3] Moreover, the Selective Service Act of 1940, 50 U.S.C.A.Appendix, § 305 (h) and (k) provide as follows:

"(h) No exception from registration, or exemption or deferment from training and service, under this Act, shall con-

While Form 42-A, which had been filled out by defendant's employer to corroborate the grounds he advanced to his draft board for deferment, contains an instruction that: "If the registrant is referred, the employer must notify the local board promptly of any change in the conditions upon which his deferment is based, or if his employment is terminated," we do not construe the omission of any reference to the registrant's duty in that connection as having been intended to relieve the registrant of his responsibility under Regulation 626.1. For one thing, the instruction on Form 42-A must be considered in its context: viz., Form 42-A was intended for employer use—not as instructions for employees. Also, the purpose of Form 42-A was to secure for local boards additional, corroborative evidence of registrant's occupational status, rather than to supplant the registrant's duties in regard to his statements or representations to the draft board. See, e.g., Selective Service, N.Y.C. Headquarters Bulletin No. 119, dated June 24, 1944. And, finally, N.Y.C. Headquarters Bulletin No. 118, dated June 9, 1944, explicitly stated that: "Notwithstanding the liberalized policies regarding occupational classification, it still remains the duty and responsibility of *registrants and employers* [italics added] to notify Local Boards in *writing* of any facts which might affect a registrant's classification. (Section 626.1 of the Regulations). All terminations and changes of employment must be reported promptly." This reaffirmance of the registrant's duty of notification, following as it does a reference in the same Bulletin to the policy of continuing or reclassifying registrants 30 and over in Class II-A or Class II-B on the basis of sufficient evidence contained in forms made out by employers, makes quite clear the intent of the selective service administrators.

The contention that Wain might have been misled by the instructions given to employers on Form 42-A into believing that the duty to report imposed on registrants by Regulation 626.1 was unnecessary, is unsubstantial. No evidence was offered to support such a contention and Wain's own testimony shows that his attempted justification for such failure was along other lines.

It was for the local board, and not for Wain, to determine the proper classification. If it was determined erroneously he had the right to invoke the appeal board. His reliance upon a doctor's certificate when his real reason for not working for Universal between September 2 and December 18, 1944 was inability to obtain employment there because the company then had no defense work available for him, and his neglect to report the cessation of employment with that company indicated a deliberate intention to violate the regulation. The fact that Universal retained the registrant on a replacement schedule does not meet the requirements of Regulations 626.1(b). Such an arrangement was continued for months and might have continued indefinitely. The arrangement did not keep him in defense work and eventual employment depended on the ability of Universal to secure another government contract on which he could work, which it did not secure for about three months.

It is also argued that the judge did not find Wain guilty of an intent to violate the regulation because he said when referring to Wain's failure to report: "I was a little bit sure it was rather deliberate at one time, I am not too sure that it was deliberate now. I think he knew he should have reported, and he did not, and it may be he thought he would get back to work any day." This statement and some

---

tinue after the cause therefor ceases to exist."

"(k) Every registrant found by a selective service local board * * * to be necessary to and regularly engaged in an * * * endeavor essential to the war effort, shall be deferred * * * so long as he remains so engaged * * * Provided, That should any such person leave such occupation or endeavor, except for induction * * * his selective service local board, subject to appeal * * * shall reclassify such registrant in a class immediately available for military service, unless prior to leaving such occupation or endeavor he requests such local board to determine, and such local board, subject to appeal * * * determines, that it is in the best interest of the war effort for him to leave such occupation or endeavor for other work."

statements by the judge that intent had nothing to do with the case were ad interim utterances during the trial which did not, in our opinion, affect the finality of his general finding.

Rule 23(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, is as follows:

"(c) Trial without a Jury. In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially."

No request for special findings was submitted. On March 29, 1946 the judge had found the defendant "guilty as charged." On the defendant's motion he reopened the case to receive further testimony. After hearing argument on April 30, 1946 he received briefs and on May 24, 1946 rendered the following decision and general finding.

"I find the defendant guilty, and in view of what has been said through the trial I think I should clear something up. It is my opinion that this defendant did not comply with the statute which required him, after ten days, to notify the draft board of the change in status in his employment, and that he did not notify the Draft Board until some two and one-half months later of this change. He says he did not think he had to report that to the Draft Board. I believe that an intention not to comply with the statutory provisions can be spelled out of his failure to comply with the statute, especially in view of the time which elapsed between the ten-day period, which was the time in which he was compelled to notify the Draft Board and the time he actually did notify the board."

Trials will never be concluded if judgments rendered after full consideration are to be reversed because of remarks made and tentative theories advanced by a judge in the course of the trial.

Defendant's criticism of Regulation 626.1 (b) as too vague, and of the indictment as not sufficiently setting forth the offense, is without merit. We hold that he was fully apprized of the charge against him and was allowed abundant opportunity to meet it.

The judgment of conviction is affirmed.