## UNITED STATES v. LEMBO et al.
### No. 14094.

District Court, E. D. Pennsylvania.

Feb. 18, 1948.

210

Edward A. Kallick, Asst. U. S. Atty., of Philadelphia, Pa., for plaintiff.

Jacob Kossman, of Philadelphia, Pa., for defendant Lembo.

Wilfred R. Lorry, of Philadelphia, Pa., for defendant Aleli.

McGRANERY, District Judge.

The defendants were indicted jointly December Term, 1946, 14094.

Count No. 1 in the indictment charged Joseph John Lembo, Jr., of knowingly failing and neglecting to perform a duty required of him under the provisions of the Selective Training and Service Act of September 16, 1940, 50 U.S.C.A.Appendix, § 311. The duty required of defendant Joseph John Lembo, Jr., was defined in Selective Service Regulation 626. 1b, later amended, which stated: "Each classified registrant shall within 10 days after it occurs * * * report to his local board any fact which might result in such regis-

trant being placed in a different classification."

Count No. 2 of the same indictment charged Louis Anthony Aleli with failing to perform a duty as set forth in Form 42A, Occupational Classification Affidavit, which under Selective Service Regulation 605.51 had the force of a Regulation. The instructions at the bottom of this form stated: "* * * If the registrant is deferred, the employer must notify the Local Board promptly of any change in the registrant's job status, or if his employment is terminated."

The jury found both defendants guilty of the counts charged in the indictment. Both defendants have moved in the alternative for judgment of acquittal and for a new trial.

A review of the pertinent facts in the case is briefly this:

In the summer of 1942 James W. Stout conducted an automobile and repair service business under the name of Stout's 69th Street Service, Inc., hereinafter referred to as Stout's, Inc. By arrangement sometime in July, 1942, Stout met defendant Aleli in the office of a lawyer in the City of Philadelphia. As a result of this meeting, an agreement was entered into between Stout's, Inc., as represented by James W. Stout, and defendant Aleli, under the terms of which a portion of the premises used in the automobile business was converted to the manufacture of shells in the war effort. Prior to this time defendant Aleli had been employed by the United States Government at the Frankford Arsenal. Stout knew nothing at all about the manufacture of shells. Under the terms of the agreement, Aleli and Stout would each draw $10,000 a year if profits were sufficient, and 37½% of the net profit of the business. For 1943 Aleli reported an income of approximately $15,000 from Stout's, Inc., and for 1944, approximately $31,000. Defendant Aleli was general manager in charge of the manufacture of war material.

Defendant Joseph John Lembo, Jr., was born in the City of Philadelphia in 1910 or 1911; he is married and the father of one child born prior to the attack on Pearl Harbor. He registered with his local draft board as required under the Selective Training and Service Act of 1940, and on June 7, 1941, filed his original questionnaire. In answer to the question, Registrant's Statement Regarding Classification, he stated: "If license is approved and I were not deferred I would suffer a very large monetary loss. In addition, the business requires my personal attention." The local draft board placed the defendant Lembo in III A, a category popularly designated "for pre-Pearl Harbor fathers." Thereafter, Lembo received his beer distributor license and built up a very substantial business employing a number of men, and still in operation at 418 New Market Street, Philadelphia. Lembo's III A status was continued until August 16, 1943, when he was ordered to report for a physical examination. The week following, on August 23, 1943, Lembo became an employee of Stout's Inc., through his cousin, Aleli. The next week, on August 30, 1943, a Form 42A was prepared, requesting Lembo's deferment, describing him as an "expediter" and stating that it would take over six months to replace him. This request for deferment was signed by James W. Stout and received at the draft board on September 1, 1943. On September 2, 1943, Lembo was reclassified back into III A, a classification based upon dependency, not occupation. Thereafter, on November 16, 1943, another Form 42A affidavit was filled out for Lembo, signed by defendant Aleli, and setting forth the same facts contained in the previous Form 42A. In February, 1944, Lembo was reclassified to class II B until June 30, 1944, in accordance with this request for occupational deferment. Similarly, in April, 1944, and in February, 1945, Aleli again requested a further deferment for Lembo. As a result he was carried in classification II B until December, 1944, and in March, 1945, his classification was again continued in II B until September, 1945. After each classification was sustained by the Appeals Board, as required for II B classifications, notice was sent to Stout's, Inc., and to Lembo.

Each of the three 42A affidavits, requesting deferment for Lembo and signed by Aleli, gave August 23, 1943, as the date

212

Lembo entered present job and described that job as "expediter." Lembo, as a matter of fact, had left Stout's, Inc. in the first week of October, 1944, and did not return until late in January, 1945. In that period, he devoted himself wholly to the beer distributing business he had maintained before and during his employment at Stout's, Inc.

In January, 1945, the Federal Bureau of Investigation began an investigation of Lembo's employment status. On the 25th or 26th of January, 1945, Lembo returned to work at Stout's, Inc., where he was employed until around August 1, 1945. On March 19, 1945, he went voluntarily to the local office of the Federal Bureau of Investigation and gave a statement concerning his employment. Neither Lembo nor Aleli ever notified the draft board of the fact that Lembo was not employed at Stout's, Inc., for the period from early in October, 1944 until January 25 or 26, 1945.

■■ Counsel for both defendants have pressed motions for judgment of acquittal and urged various reasons, as well, for granting a new trial. On behalf of Lembo's motion for acquittal it is first pointed out that only failure to perform a *duty* is criminal under the basic statute, 50 U.S.C. A.Appendix, § 311, which provides that knowingly failing and neglecting to perform a *duty* required under the provisions of the Act and the rules and regulations pursuant thereto is a violation. The wording of Regulation 626.1b, it is argued, falls short of creating a duty for two reasons: One, because it does not explicitly use the word "duty" in describing the obligation of a registrant, and, two, because it does not create an obligation at all, but only affords a ten-day opportunity to a registrant, after his classification has been considered anew, to urge new facts upon a local board for its consideration. The first contention carries its own weakness within it. It is admitted by counsel that other regulations create a "duty" in this sense without actually using the word itself (cf. Regulations 623.61-1; 611.33; 611.34). Therefore, it is clear that mechanical use of the word "duty" is not the standard for determining when an obligation punishable by criminal sanction is created under the Act. The

proper criteria are the usual meaning of all the language used and the nature and importance of the action involved. I feel that the comparison between use of the word "shall" and "should" in Regulation 626.1b is highly significant; e. g., each classified registrant *shall,* and any other person *should,* report to the local board any fact that might result in a different classification. Moreover, the practical matter involved was extremely important to efficient operation of the Selective Service Act. Class II B deferments, for example, were sometimes granted for as long as six months at a time. At a time when the manpower barrel was being scraped, the necessity for up to date and accurate knowledge upon the facts of each registrant's reasons for deferment are obvious. Employers had a duty to notify the draft board of any change in a registrant's job status. The obligation should clearly rest, as well, upon the registrant. To accept defendant's argument that 626.1b did not create an obligation enforceable by criminal sanctions might hamper and cripple the selective service system. The same objection applies, with even greater force, to his contention that 626.1b created no obligation at all. See United States v. Wain, 2 Cir., 162 F.2d 60, 64, certiorari denied 68 S.Ct. 69, 92 L. Ed. ——.

■ Counsel also urges as ground for a judgment of aquittal that 626.1b creates a standard of criminal liability too vague to be constitutional, that the offense cannot be prosecuted because the statute has expired, and that there was not enough evidence of criminal intent or guilt to warrant submission of the issues to a jury. The first contention, I feel, has been adequately answered by the trial Judge in United States v. Weiss, D.C., 65 F.Supp. 556, 561, affd., 2 Cir., 162 F.2d 447, who pointed out, inter alia:

"The language of Regulation 626.1(b) is not so vague and indefinite that no standard of guilt is furnished to persons of integrity interested in obeying it. The purpose of the Regulation to require the disclosure by the registrant to the Local Board of any facts which might alter his classification is obvious. Since the legislation is designed for the general welfare of the whole public in

an emergency period, its object should not be lightly thwarted by a strained interpretation."

The argument that prosecution must fail because the statute has expired is similarly without weight. Section 316(b) of the Act, finally amended on June 29, 1946, read:

"All of the other provisions of this Act * * * shall become inoperative and cease to apply * * * on March 31, 1947, * * * *except as to offenses committed prior to such date.*" (Emphasis supplied.)

Defendant argues, however, that the only Act that expired upon March 31, 1947, was the "Act" of June 29, 1946, and under this "Act" men over thirty were under no duty and could, therefore, commit no offense. However, this conception of yearly "Acts" dealing with selective service, each separate and distinct, is unrealistic and I do not accept it. Cf. United States v. Powers, 307 U.S. 214, 59 S.Ct. 805, 83 L.Ed. 1245; Fleming v. Mohawk Co., 331 U.S. 111, 114, 67 S.Ct. 1129. The basic Act was amended, of course, but the offenses committed in this case are within the saving clause.

The contention that there is insufficient evidence to warrant a finding of guilt was urged upon me at the close of the government's case and again before submission of the issues to the jury. Upon examination of the record, I find, as I felt then, that there is abundant evidence to allow the jury to find criminal intent in Lembo's failing to notify his draft board that he had been laid off. Lembo was undisturbed in his III A Selective Service classification for about two years when he received a notice to report for a physical examination in August, 1943. Previously, he had joined the Coast Guard Reserve. Within one week, through his cousin, Aleli, he went on the payroll of Stout's, Inc., as an "expediter." Seven days later, a request for deferment was filled out for Lembo and sent to the draft board. In the spring of 1944, notice was sent to Lembo that his classification was now II B. Lembo testified he took the job at Stout's, Inc., to help the war effort, and that he did not need the money. However, he had previously been helping the war effort in the Coast Guard Reserve from which he resigned a week after going to work at Stout's, Inc. In early October, 1944, he was laid off. Lembo was himself an employer of men in his beer distributing business. In January, 1945, the Federal Bureau of Investigation began to investigate him, and in late January or early February (according to Lembo's statement to the F. B. I.) he came back to work. In March, he voluntarily went to the Federal Bureau of Investigation, and made a statement. I feel that there is evidence from which the jury did properly find that Lembo knowingly failed to perform his duty of telling the draft board that he had been laid off. Cf. Stassi v. United States, 5 Cir., 152 F.2d 581, certiorari denied 328 U.S. 842, 66 S.Ct. 1020, 90 L.Ed. 1617; United States v. Wain, supra; United States v. Weiss, supra.

Counsel for defendant Aleli has also moved in the alternative for a judgment of acquittal and for a new trial. In support of the former motion he argues that there is not sufficient evidence to go to the jury on the issue of whether Aleli was the employer of Lembo. It is true, as defendant contends, that under this indictment Aleli failed to perform a "duty" only if he was Lembo's employer. Form 42A, which had the effect of a Regulation, provided that:

"If the registrant is deferred, the *employer* must notify the Local Board promptly of any change in the registrant's job status, or if his employment is terminated." (Emphasis supplied.)

After briefly discussing the facts, the Court charged the jury on this point, as follows:

"From these, ladies and gentlemen, you are to determine whether or not Mr. Aleli was the employer of Mr. Lembo. * * * You will have to look at that picture out there at Stout's 69th St., Incorporated, just as is."

The core of defendant's argument on the motion for judgment of acquittal is that since there was ample evidence in the case that the business at 69th Street was a corporation, no actual person could be the employer. But the corporate facade does

not end the case if there is evidence that despite it, the powers ordinarily associated with the employer concept actually belonged to and were exercised by some one person. Certainly, the corporate entity has been disregarded in many other situations; e. g., cf. United States v. Milwaukee Refrigerator Transit Co., C.C.Wis., 142 F. 247; United States v. United Shoe Machinery Co., D.C., 234 F. 127; United States v. Barwin Realty Co., D.C., 25 F.2d 1003. In McClayton v. W. B. Cassell Co., D.C., 66 F.Supp. 165, at pages 173, 174, in which a veteran unsuccessfully attempted to get his former job back under the re-employment provisions of the Selective Service Act, the Court pointed out:

"* * * It is argued * * * that McClayton's situation should be regarded as that of an employe by Cassell. But this is not a tenable view of the facts. Prior to 1928 when the corporation was formed, that was the real situation. But the very object of forming the corporation was to change the relationship theretofore existing, which was that of employer and employe, to one which *in economic reality was a partnership between the two men with respect to the profits of the business*. And certainly neither partner is an employe of the other. (Emphasis supplied.) * * *

"The mere literal scope of the Act should yield in any case where its wholehearted construction requires the precise meaning of individual words to give way to the evident purposes of the statute."

These words might well have been written with the instant case in mind. I feel that the Act can encompass as an "employer" a person who was the actual moving force in a business and who supervised selective service matters. To construe the Act otherwise would be an unwarranted insulation of conduct that could disrupt its operation.

With this in mind, I feel that there is enough evidence from the government's case alone to justify a jury finding that Aleli actually was Lembo's employer in this war work. A few references to the Notes of Testimony will suffice. Thus, Stout's letter to the draft board said that "our business has been built around and by

Aleli." Stout and Aleli shared the same desk; Aleli had charge of production and the office in the war work; including Selective Service matters and had nothing to do with the garage, which Stout was still operating. In fact, about fifty or sixty hours a week, Aleli was actually on the premises, and had complete charge of the business. Stout knew nothing about the shell business, and was in the garage business, when he and Aleli worked out an arrangement calling, inter alia, for Aleli to get $10,000 a year, if profits permitted, and 37½% of the net profit. This is enough, I feel, to warrant submission to the jury.

It should be noted, in addition, that Aleli testified that Lembo came to see him for a job and that he and Mr. Stout hired Lembo. Further, when asked if he were a "mere employee" Aleli replied "Well, hardly."

This, of course, is a one-sided presentation of the evidence, disregarding contradictions and inconsistencies, but it indicates to me that there was sufficient evidence on the issue to allow a jury to resolve any conflict and conclude that Aleli was Lembo's employer. The jury was charged, in addition, that to convict, "* * * there must be wrongful intent. There must be knowledge of the existence of an obligation and a wrongful intent to evade it." There can be no question then, in view of the verdict, of imputing a duty to Aleli of which he was ignorant.

■■ Both defendants have urged various grounds for a new trial, as well. These deal with evidentiary rulings, failure to sever, comments in the course of the trial, and errors in the charge. The particular objection that an improper comment was made upon defendant Aleli's possible failure to testify would be serious, of course, if true. What the Court did say, at N. T., page 181, is this:

"That is not the charge, about Mr. Stout. The Government charges Mr. Aleli. *If the Government meets that burden* it is up to Mr. Aleli to give some response." (Emphasis supplied.)

I feel that this statement was not incorrect, and, a fortiori, not improper. Similarly, I feel that generally the rulings on

evidence and severance were within the province of a trial court's discretion, and that they, along with the comments and charge, did not result in prejudicial error. This view may well be questioned, of course, but in any event, the points raised do not, by their novelty or complexity, require the extended treatment given those above.

Accordingly, therefore, I shall deny the motions of both defendants for a judgment of acquittal and for a new trial.