See also, 10 Cir., 408 F.2d 944.

**Joel D. RICH, Plaintiff,**

**v.**

**Lewis B. HERSHEY, Director of Selective Service, Herbert Hope, State Director Oklahoma, Local Board #76 (Tulsa, Oklahoma) Selective Service System, Local Board #3 (Denver, Colorado) Selective Service System, Howard Cowan, Chairman, Robert Copeland, George D. Le Riche, Bruce Peterson and Jewell R. Mann, Members of Local Board #76, Defendants.**

**Civ. A. No. C–1446.**

United States District Court
D. Colorado.

Aug. 21, 1969.

Milnor H. Senior, Denver, Colo., for plaintiff.

James L. Treece, U. S. Atty., and Milton C. Branch, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

### I

### SUMMARY OF THE CASE

Plaintiff, Joel D. Rich, a registrant of Selective Service Local Board No. 76 in Tulsa, Oklahoma, was given notice to report for induction into the armed services by his local board in a letter dated April 25, 1969. Claiming that the board had acted without jurisdiction and in violation of administrative regulations, Rich brought this action challenging the validity of his order to report for induction and seeking an order requiring his board to reclassify him pursuant to C.F.R. § 1632.30.[1] The judgment which has been heretofore announced from the bench is formalized in this opinion.

### II

### THE FACTS

From December 17, 1963, to June 9, 1967, the plaintiff attended undergraduate school at Oklahoma State University and graduate school in business administration at the University of Denver. During this period he was classified II-S. After receiving his masters degree, Rich was reclassified I-A by his local board. He appealed this reclassification to the State Appeal Board, claiming that he was entitled to a II-S classification since he had enrolled as a full time student for the 1967–68 school year at the University of Denver School of Law. On August 2, 1967, Rich was reclassified II-S until July 29, 1968, pursuant to the recommendation of the State Appeal Board. The local board reclassified Rich I-A on March 20, 1968, at which time he reported for his preinduction physical examination at Denver Armed Forces Entrance and Examining Station and was found acceptable for induction; however, on April 4, 1968, he was again classified II-S until July 29, 1968, in compliance with the Appeal Board's recommendation.

On August 14, 1968, Local Board No. 76 reclassified the plaintiff I-A, his appeal was denied on November 14, 1968, and an Order to Report for Induction on December 12, 1968, SSS Form 252, was issued to him on November 22, 1968. Rich wrote to his board on November 25, 1968, requesting a postponement of his induction on the ground that final examinations for the fall quarter of law school would not terminate until December 11, 1968, and, immediately thereafter, wrote to Colonel Herbert Hope, Oklahoma State Director of Selective Service, requesting "a postponement of induction in order to allow the Department of the Navy to complete processing of my application for their Officer Candidate School Program." On December 9, 1968, the local board postponed his induction until December 15, 1968, and mailed him SSS Form 264 so providing. Shortly thereafter, the board notified Rich that "Your Postponement of Induction has been amended to read, 'Postponed until February 1, 1969' per instructions received from the Oklahoma State Headquarters."

On February 1, 1969, Rich was notified to report for induction at Tulsa, Oklahoma on February 25, 1969. He immediately requested a I-S(c) classification under 32 C.F.R. § 1622.15(b), which was denied by his local board. Rich then

1. Section 1632.30 reads as follows:
Upon receiving notice from the induction station that a selected man who has been forwarded for induction has been inducted or finally found not qualified for service in the Armed Forces, the local board shall reopen his classification and classify him anew.

requested and was granted a transfer of induction, SSS Form 230, from Tulsa, Oklahoma, to Denver, Colorado, and Local Board No. 3, Denver, Colorado, ordered him to report for induction, SSS Form 253, on March 24, 1969.

Rich filed suit in this Court on March 17, 1969, claiming that he had an absolute statutory right to a I-S classification. He sought an injunction prohibiting his induction and a writ of mandamus directing the Selective Service to classify him I-S. This Court denied the requested relief and dismissed the action. The Tenth Circuit Court of Appeals affirmed. 408 F.2d 944.

Pursuant to the original order issued November 22, 1968, Rich was again notified to report for induction at Denver, Colorado, on April 9, 1969. He reported as ordered, but was found not acceptable for induction under current medical standards because of "active psychotherapy and external thrombosed hemorrhoids."[2] The examining doctor recommended re-examination in one year. No independent psychiatric examination was conducted at the induction station. The diagnosis was based purely on psychiatric reports from Dr. Helen P. Gerash, M. D., and Dr. Warren H. Walker, M. D., which were sent to the induction station on April 7, 1969 by Rich's attorney.[3] Dr. Gerash's report recommended that Rich receive immediate intensive psychiatric treatment, and Dr. Walker's report consisted of a letter which certified that Rich was under psychiatric treatment and could not be effective in the military service at that time.

After Rich was found unacceptable for induction, his medical file was sent to Oklahoma State Selective Service System Headquarters, whereupon Colonel Hope submitted it to the Oklahoma Medical Advisory Committee for review and recommendation. The Committee suggested "that the registrant be re-examined, with probably consultation from psychiatrist in this area."[4] Colonel Hope then advised Local Board No. 76 that it was the recommendation of State Headquarters that Rich be "ordered to report for induction on May 14, 1969, to your local board at Tulsa, Oklahoma, for forwarding to the Oklahoma City Armed Forces Examining and Entrance Station."[5] Local Board No. 76 followed the recommendation of State Headquarters and in a letter dated April 25, 1969, advised Rich:

An Order to Report for Induction, SSS Form 252, was issued to you under date of November 22, 1968, and that order is still outstanding.

You are therefore ordered to report for induction to the Local Board Office, Room 322, Federal Building, 333 West 4th Street, Tulsa, Oklahoma, at 7:30 A.M., May 14, 1969 * * *.

Rich objected to this order and requested that the board reclassify him because of the Denver Induction Station's finding that he was unacceptable for induction. No action was taken in response to Rich's request. He then brought the present action claiming that the order of November 22, 1968 is no longer valid; that the Selective Service regulations require that he be reclassified; and that the board's actions are without any basis in law or fact.

### III

### THE LAW

Plaintiff's complaint seeks preinduction judicial review of certain actions of his local board. The government contends that this Court is precluded from

---

2. Report of Medical Examination, Standard Form 88; Statement of Acceptability, DD Form 62; Transfer for Armed Forces Physical Examination or Induction, Part 4.—Disposition, SSS Form 230; Record of Induction, DD Form 47.

3. Both of these reports were originally sent to Rich's attorney and Rich has never seen them.

4. Letter from F. Redding Hood, M.D., Chairman to Colonel H. Hope, April 21, 1969.

5. Letter from Colonel Herbert Hope to Local Board No. 76, April 22, 1969.

granting such review at this time by virtue of § 10(b) (3) of the Selective Service Act of 1967, which provides that there can be no judicial review of the classification or processing of any registrant except as a defense to criminal prosecution for failure to report for induction.[6]

■ In exercising the authority to classify Selective Service registrants under the Selective Service Act and the regulations adopted pursuant thereto, the local boards must make findings of fact and exercise their judgment as to the implications of these facts in light of the applicable regulations. In so doing, their decisions are vulnerable to attack on two grounds: (1) that the facts found are not supported by the evidence, and (2) that the judgment of the board as to the legal meaning of the applicable regulations was erroneous.[7] Of course, these claims might possibly arise every time a local board classifies an individual pursuant to the Selective Service Act and regulations. Congress, in adopting 10 (b) (3), determined that to allow such suits prior to induction would substantially impair the ability of this country to effectively raise an army.[8]

■ In Oestereich v. Selective Service System Bd. No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), the Supreme Court distinguished the above described situation—where the board exercises its judgment in applying the Act and regulations—from one in which the board acts in blatant disregard of mandatory provisions which allow no room for the exercise of judgment or discretion. Oestereich, a student at a theological school, brought a preinduction suit to enjoin his reclassification to I-A under the delinquency provisions of the regulations.[9] The Court held that preinduction review was permissible despite 10(b) (3) because the statute granting exemptions to theological students was mandatory and left no room for judgment as to its meaning, and the board had not purported to act pursuant to this statutory requirement, but rather had acted in accordance with certain regulations which could not legitimately be used to destroy the statutory exemption. Thus, 10(b) (3) is inapplicable where (1) the statutory or regulatory provision under which the board should have acted is mandatory, and (2) the claim is not that the board erroneously applied the applicable statute

6. Section 10(b) (3) provides:

No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant.

7. This type of attack is directed at what Mr. Justice Harlan, concurring in Oestereich v. Selective Service System Bd. No. 11, 393 U.S. 233, 240, 89 S.Ct. 414, 417, 21 L.Ed.2d 402 (1968), described as

"the numerous discretionary, factual, and mixed law-fact determinations which a Selective Service board must make prior to issuing an order to report for induction."

8. Section 10(b) (3) of the Selective Service Act of 1967 provides only for the raising of such issues as a defense to a criminal prosecution for refusal to report for induction. *See* note 6 *supra.* The Supreme Court, however, has clearly indicated that one may submit to induction and then raise these questions by habeas corpus. *See* Witmer v. United States, 348 U.S. 375, 377, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). However, no matter which of these methods are used, review of errors in judgment is limited to determining whether there is any basis in fact for the classification given the registrant. Estep v. United States, *supra.*

9. 32 C.F.R. § 1642.1 et seq.

or regulation, but rather that the board acted in complete disregard of it.[10]

The present case falls within the *Oestereich* exception to § 10(b) (3).[11] First, § 1632.30 is *mandatory* and clearly states what *shall* be done if an induction station finds a registrant not qualified for service in the Armed Forces: "[T]*he local board shall reopen his classification and classify him anew.*" (Emphasis added.) Second, plaintiff's claim is not that the local board or Oklahoma State Headquarters misapplied § 1632.30. He contends that the attempt to induct him pursuant to the November 22, 1968 order amounted to a clear disregard of § 1632.-30 and constituted lawless action beyond the scope of the board's jurisdiction.[12]

In such a case preinduction review is clearly proper under *Oestereich.*

The government also argues that the Denver Induction Station improperly relied on plaintiff's evidence of change in physical and mental condition. They maintain that since Rich had failed to inform his local board of his change in physical condition and the fact that he was undergoing psychiatric treatment, the induction station should have refused to consider it. This argument has no merit. Failure of a registrant to advise his local board of a change in status subjects him to possible criminal prosecution, *see e. g.,* United States v. Wain, 162 F.2d 60 (2d Cir. 1947), but nothing in the Selective Service Act or the regulations dictate that the induction center is precluded from considering such a change. Absent some allegation and proof of fraud, the action of the Denver Induction Station must stand as valid.

■ We now come to the merits of the case. On November 22, 1968, Local Board No. 76 issued a valid order to report for induction. Its validity was

10. After reviewing the facts in *Oestereich,* Mr. Justice Douglas, speaking for the majority, stated:

> In such instances, as in the present one, there is no exercise of discretion by a Board in evaluating evidence and in determining whether a claimed exemption is deserved. The case we decide today involves a clear departure by the Board from its statutory mandate. To hold that a person deprived of his statutory exemption in such a blatantly lawless manner must either be inducted and raise his protest through habeas corpus or defy induction and defend his refusal in criminal prosecution is to construe the Act with unnecessary harshness. 393 U.S. at 238, 89 S.Ct. at 416.

*See also* Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 415 (1968), wherein the Court held that preinduction review was not available where the plaintiff's claim was that the board's classification had no basis in fact and that the board had misapplied the statutory definition of conscientious objector. In distinguishing *Oestereich* the Court stated:

> In *Oestereich* the delinquency procedure by which the registrant was reclassified was without statutory basis and in conflict with petitioner's rights explicitly established by statute and not dependent upon an act of judgment by the board * * * Here, by contrast, there is no doubt of the board's statu-

tory authority to take action which appellee challenges, and that action inescapably involves a determination of fact and an exercise of judgment. 393 U.S. at 258, 89 S.Ct. at 426.

11. Strictly speaking, the plaintiff in this action does not challenge his specific classification; therefore, there is some doubt as to whether § 10(b) (3) would be applicable without regard to the *Oestereich* exception.

12. Several cases have suggested that the type of claims raised in *Oestereich* and the present case—that the board acted in disregard of a mandatory statutory or regulatory provision—properly bring into question the very jurisdiction of the board to proceed in the manner complained of. For example, in Wolff v. Selective Service Local Bd. No. 16, 372 F.2d 817 (2d Cir. 1967) the Second Circuit held that preinduction review of the use of delinquency provisions to withdraw II-S classifications from student demonstrators was proper. In the course of the opinion the Court stated:

> Wholly aside from the First Amendment considerations which we believe compel our intervention at this time, it has in the past been suggested that when a local board acts in flagrant disregard of the applicable regulations and thus in clear excess of its jurisdiction, the courts may intervene at any time to rectify the situation. 372 F.2d at 826.

unaffected by the various postponements and Rich was obligated to report for induction on April 9, 1969. *See* 32 C.F.R. § 1632.2(d). Rich complied fully with this order by reporting at the induction center and submitting himself for induction. *See* 32 C.F.R. § 1632.14. At this time he was found unacceptable for military service. By ordering Rich in for induction, the Selective Service Board fulfilled its function. After that the authority was vested in the induction center, which is subject to the Secretary of Defense, to accept or reject him. They rejected him, and the propriety of their determination is not subject to review or rejection by Selective Service.

The Selective Service Act of 1967 provides:

> No person shall be inducted into the Armed Forces for training and service or shall be inducted for training in the National Security Training Corps under this title * * * until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense.

Pursuant to this provision, the Secretary of Defense adopted Regulation § 1632.30 which states that if one "who has been forwarded for induction has been inducted or *finally* found not qualified for service in the Armed Forces, the local board *shall* reopen his classification and classify him anew." (Emphasis added.) Plaintiff's Selective Service file clearly shows that the induction station's finding of unacceptability was final.[13] In the absence of some showing of fraud, and there has been none, this ruling is binding.

Thus, the board was obligated to comply with the mandatory requirement of § 1632.30 and reclassify him. This the board failed to do.[14]

## IV

## DISPOSITION

Instead of acting in accordance with § 1632.30, the board attempted to order plaintiff to again appear for induction pursuant to the November 22, 1968 order. This order was beyond the board's authority and was void. When the plaintiff appeared at the Denver Induction Station on April 9, 1969, he fully carried out the November 22, 1968 order. After that, its force was spent and it could have no further operative effect. Certainly the board lacked power, based on its November 22, 1968 order, to take another run at it, so to speak, based on its own dissatisfaction with the result.[15]

Because, then, of these failures to meet the mandatory requirements of the Selective Service regulations, it follows that the board proceeded wholly without authority in attempting to induct plaintiff into the Armed Forces.

Plaintiff is entitled to the relief prayed for, an injunction prohibiting any attempt to induct plaintiff pursuant to the

13. This finding was recorded in the Report of Medical Examination, Standard Form 88, parts 73–75; the Transfer for Armed Forces Physical Examination or Induction, Part 4.—Disposition, SSS Form 230; the Record of Induction, DD Form 47; and the Statement of Acceptability, DD Form 62. Armed Forces Regulations provided that "DD Form 62 is the induction station's official notification to the registrant through his Selective Service local board as to whether he is acceptable or unacceptable for service in the Armed Forces." AR 601–270 ¶ 79(a).

14. *See* United States ex rel. De Graw v. Toon, 151 F.2d 778 (2d Cir. 1945) dealing with the local board's duty to reclassify one who has received an honorable discharge from the Armed Forces.

15. The practice of the Denver Induction Center of relying on the written opinions of physicians furnished by the inductee seems highly undesirable. An independent examination at Fitzsimons Hospital, for example, would dispel all doubts and although this is not required by the regulations, it appears to be much better practice. It would unquestionably serve to avoid the kind of controversy which arose in the present case.

November 22, 1968 order and absent compliance with § 1632.30.[16]

Counsel for Rich will *promptly* prepare and submit an *appropriate* judgment for signature.

16. Whether the local board might reclassify the plaintiff I-A under § 1632.30 and issue a new order for induction need not be considered at this time.