### ZEDD et al. v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. January 13, 1926.)

No. 2433.

Criminal law ⟨⟩620(2)—Compelling defendants separately indicted to go to common trial held unauthorized by statutes (Rev. St. §§ 921, 1024 [Comp. St. §§ 1547, 1690]).

Compelling persons separately indicted for offenses against Prohibition Law to go to common trial over their objections, *held* unauthorized by Rev. St. §§ 921 or 1024 (Comp. St. §§ 1547 or 1690), and reversible error, where offenses were such that consolidation could not properly have been ordered.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Joe Zedd and others were convicted of violations of the Prohibition Law, and they bring error. Reversed and remanded for new trials.

James G. Martin and Herman A. Sacks, both of Norfolk, Va., for plaintiffs in error.

Alvah H. Martin, Asst. U. S. Atty., of Norfolk, Va. (Paul W. Kear, U. S. Atty., of Norfolk, Va., on the brief), for the United States.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. The plaintiffs in error were defendants below and will be so styled here. Two of them, Joe and Mollie Zedd, are husband and wife; the third, Kizzie Reeves, is a woman who was on the Zedd premises when they were visited by the federal officers. Three informations were exhibited, one against each of the defendants. That against the man had four counts, each of the others two. The charges against him had to do with two lots of whisky, one of one pint and the other of three gallons and three pints, each of which he was said to have possessed and sold, the former on the 13th of January, 1925, and the latter on the 17th of the same month. Three gallons and three pints were also alleged to have been the quantity possessed and sold by his wife on the same 17th of January, which was also the date upon which Kizzie Reeves was charged with having sold and possessed a half a pint.

All the defendants were convicted. It will be unnecessary for us to consider more than one of their assignments of error. The court below, against their objection, directed that the charges against all of them should be submitted to the same jury and tried together at one time, although separate verdicts were to be returned and in fact were. The government says this order was authorized by each of two sections of the Revised Statutes, viz., those numbered No. 921 and No. 1024, respectively (Comp. St. §§ 1547, 1690). The former is a codification of section 3 of the Act of July 22, 1813, 3 Stat. 21; the latter of a provision of the Act of February 26, 1853, 10 Stat. 161, regulating fees and costs, so that one of them has been in force for 112 and the other for 72 years. The earlier act, so far as our examination of the reported cases goes, has never before been invoked to sustain either the consolidation or the trying together of separate indictments or informations against different defendants over the objection of either or any of them. There are three instances in which the right of the court, under section 1024, to order a consolidation of such indictments has been in question. In two of them, the consolidation was proposed or was made against the consent of the accused, and in the third without the latter's having interposed any objection. In the last-mentioned case, which was also in point of time the latest of the three, it was said that while it might be assumed that the making of the order if seasonably objected to would have been reversible error, the silence of the defendants in the court below had waived their right to complain in that above. Goldberg v. United States, 280 F. 89 (C. C. A. 5th Cir.) Of the two in which the defendants did object, the first was tried in the Circuit Court for the Northern District of California in 1856, only three years after the enactment of what is now known as section 1024. It was there held that it did not justify the consolidation of separate indictments against different defendants, although their offense was joint and they might have been jointly indicted for it. United States v. Durkee, Fed. Cas. No. 15008. Forty years later the second came before the Supreme Court, which disposed of the precise question before it by the statement: "It is clear that the statute does not authorize the consolidation of indictments in

such a way that some of the defendants may be tried *at the same time with* other defendants charged with a crime different from that for which all are tried." McElroy v. United States, 17 S. Ct. 31, 32, 164 U. S. 76, 80 (41 L. Ed. 355). The italics are ours.

In none of these cases, so far as the reports show, did anybody concerned suggest that what is now known as section 921 gave the power to do what section 1024 did not authorize, although the former says that the court may direct consolidations "when it appears reasonable to do so." It is possible that it was not thought of because the Act of 1813 was supposed to have relation to civil rather than to criminal practice, a notion which is not without plausibility in view of its other provisions and the purposes which it was intended to serve as they are stated in Mutual Life Insurance Co. v. Hillmon, 12 S. Ct. 909, 145 U. S. 285, 292, 36 L. Ed. 706. Its language is, however, broad, and some of the federal courts have without discussion assumed that it was applicable to criminal as well as to civil trials. Betts v. United States, 132 F. 228, 65 C. C. A. 452. On the other hand, according to the decided cases, important practical differences may depend upon whether a consolidation is ordered under the authority of one section rather than the other. When section 921 is invoked, the parties in selecting the jury are severally entitled to a number of peremptory challenges equal to the aggregate they would have possessed had the · trials' been separately had. Mutual Life Insurance Co. v. Hillmon, 12 S. Ct. 909, 145 U. S. 285, 36 L. Ed. 706; Connecticut Life Insurance Co. v. Hillmon, 23 S. Ct. 294, 188 U. S. 208, 47 L. Ed. 446; and Butler v. Evening Post Publishing Co., 148 F. 821, 78 C. C. A. 511, in this court. All of the cited cases were on the civil side. Where two or more criminal indictments are consolidated, as authorized by section 1024, it has been held that the jury should be selected and the trial conducted precisely as it would have been had all the counts of the consolidated indictments from the first been included in a single pleading. Kharas v. United States, 192 F. 503, 113 C. C. A. 109; Miller v. U. S., 38 App. D. C. 361, 40 L. R. A. (N. S.) 973.

From what has been said, it obviously might be interesting to inquire whether Congress intended the act of 1813 to apply to criminal cases, and, if so, whether in so far as it dealt with consolidation it was not repealed by the later and more specific provisions of the act of 1853. Doubtless, an authoritative answer to both these questions

may some time be required, but for the purposes of the instant case none need now be given. For its decision it suffices to hold, as we must, that in it no order of consolidation could have been properly made against the objection of the defendants or any of them, because it would have put the two women on trial at the same time with the man who was charged with two offenses of which neither of them was accused. Moreover, although the government does not always have to prove dates and quantities precisely as they are laid in the information or indictment, no one can doubt that the attorney for the United States, when he caused the informations before us to be drafted, intended to distinguish the offendings he charged against Kizzie Reeves from any of those of which he alleged either of the Zedds to have been guilty. Under such circumstances, an order requiring the simultaneous trial of all these informations was open to all the objections which could be urged against a consolidation. As we read McElroy's Case, that which was there condemned was the forcing a common trial of separately charged defendants. The wording of the order by which that result was brought about was immaterial. In the brief of the government, it is said that by the procedure adopted below the trial court is permitted to despatch business, and that it would be "a distinct setback to the efforts now being made to bring about swift justice and to avoid delays, especially in criminal matters, for this court now to adopt the contention of the defendants and construe" the McElroy Case "as holding that charges must be against the same person in order that two indictments or informations be tried together before the same jury." Why would it be? If the evidence in the possession of the prosecution indicates that more than one defendant was concerned in the commission of a crime, it should be easier and cheaper to draw one information than two or, as in the instant case, three. There would be fewer entries to be made and fewer papers to be filed. No question can arise as to the number of challenges to which the parties will be entitled. The time of the court will not be taken up in finding out whether separate informations in reality all relate to one offense or to a series of like offenses in which all the defendants are alleged to have been implicated, so that in fairness they may be tried together. If the attorney for the United States thinks so, all that he has to do is to charge them all in one pleading. It is true that in that event any one of the accused can ask for a sever-

ance, but as he has the burden of showing himself entitled to it, the application is seldom made. The exercise of the power of consolidating indictments against separate persons will often be a delicate one, and there will be occasions upon which an appellate court will not be able to agree that the trial judge has rightly exercised it with resulting reversals, new trials, expense, and delay. For all these reasons, prompt, sure, and cheap justice will be furthered by the joint indictment of joint offenders. Those who are not even charged with having united to commit the crime should not be forced, against their will, into a common trial. There will be few cases in which there was in fact any concert in wrongdoing in which it will not be possible fairly to draw a joint indictment for the substantive offense or for conspiring to commit it. The suggestion in the government's brief that ten persons may be caught committing the same crime at the same time and in the same place and in the presence of the same witnesses, and yet without there having been any concert of action among them, is doubtless conceivable in the sense that all things are possible; but it scarcely seems probable that prosecuting officers will often have to deal with such a state of facts. On the other hand, the fair, swift, sure, and cheap administration of criminal justice, in our view, will as a rule, be promoted and not hindered by adhering in this matter to what has been the immemorial practice sanctioned as that has been by what was said or decided in Durkee's, McElroy's and Goldberg's Cases, supra, that is by refusing to compel separately indicted individuals, against their objection, to go to a common trial.

It follows that the judgments below must be reversed, and the cases remanded in order that each of the defendants may be given a new trial.

Reversed.