**BEAUCHAMP v. UNITED STATES.**

No. 9956.

Circuit Court of Appeals, Sixth Circuit.

April 1, 1946.

414

Donald B. Frederick, of Detroit, Mich., for appellant.

Vincent Fordell, of Detroit, Mich. (John C. Lehr, Thomas P. Thornton, and Vincent Fordell, all of Detroit, Mich., on the brief), for appellee.

Before SIMONS and ALLEN, Circuit Judges, and MILLER,[1] District Judge.

MILLER, District Judge.

The appellant, Edwin Charles Beauchamp, appeals from a judgment of conviction under an indictment, consisting of a single count, charging him with aiding and assisting a deserter from the United States Army. Section 94, Title 18 U.S.C.A.[2] He

---

[1] Then sitting by designation.

[2] "Enticing desertion from Army or Navy. Whoever shall entice or procure, or attempt or endeavor to entice or procure, any soldier in the military service, or any seaman or other person in the naval service of the United States, or who has been recruited for such service, to desert therefrom, or shall aid any such soldier, seaman, or other person in deserting or in attempting to desert from such service; or whoever shall harbor, conceal, protect, or assist any such soldier, seaman, or other person who may have deserted from such service, knowing him to have deserted therefrom, or shall refuse to give up and deliver such soldier, seaman, or other person on the demand of any officer authorized to receive him, shall be imprisoned not more than three years and fined not more than $2,000."

waived his right to a trial by jury, and following a trial before the District Judge was found guilty and sentenced to imprisonment for a period of twenty months.

The appellant complains that the trial court erred in overruling his motion for a directed verdict of not guilty made at the conclusion of the Government's case and renewed at the conclusion of all the evidence in the case. He contends that the indictment should have been dismissed for two reasons, (a) duplicity; (b) that it violates the Fifth and Sixth Amendments of the Constitution. The indictment, omitting allegations here immaterial, charges that the defendant "did * * * knowingly * * * aid and assist Alexander White, the said Alexander White being at said times a soldier in the military service of the United States who had deserted from said service and was attempting to desert from said service, as the said defendant * * * well knew; that is to say, that he, the said Edwin Charles Beauchamp, did * * * aid and assist said Alexander White in continuing his desertion and avoiding apprehension and seizure by the military authorities of the United States * * *." Appellant contends that the indictment charges him with two offenses, (a) with having aided a soldier in attempting to desert and (b) with aiding a soldier in continuing his desertion. We do not think that the single count of the indictment, considered in its entirety, is reasonably susceptible of such construction. The allegation that White was attempting to desert from the service is used in the conjunctive with the allegation that White had deserted from the service, and this conjunctive use of the two phrases is then specifically explained in these words: "That is to say, that he, the said Edwin Charles Beauchamp, did * * * aid and assist said Alexander White in continuing his desertion. * * *" A general expression in an indictment may be restricted and confined to a precise and definite fact by a description under a videlicet or scilicet. Commonwealth v. Hart, 10 Gray 465, 76 Mass. 465, 468. See United States v. Greve, D.C., 12 F.Supp. 372, 377. An indictment is not invalid for duplicity if the words employed make the singleness of the charge clear to the common understanding. Blum v. United States, 6 Cir., 46 F.2d 850. In any event, the question of duplicity was not raised before trial and was accordingly waived. Lemon v. United States, 8 Cir.,

164 F. 953, 958; Wells v. United States, 9 Cir., 257 F. 605, 609; Barnard v. United States, 9 Cir., 16 F.2d 451, 453. See also Sparks v. United States, 6 Cir., 90 F.2d 61, 63; Matthews v. United States, 7 Cir., 300 F. 556; United States v. Louisville & Nashville R. Co., D.C.W.D.Ky. 165 F. 936, 941. Nor does the indictment violate the provisions of the Fifth and Sixth Amendments, regardless of its lack of form, provided that its allegations are sufficiently definite and certain to fairly apprise the defendant of what he must be prepared to meet in order to give him a fair opportunity to prepare his defense and so that the judgment may be a bar to further proceedings against him for the same offense. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Wong-Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L. Ed. 545; Stumbo v. United States, 6 Cir., 90 F.2d 828. The indictment herein involved meets this test.

The appellant also contends that until there has been an adjudication by the proper military tribunal that the soldier herein involved is guilty of violating the Articles of War relating to desertion, 10 U.S.C.A. § 1530 et seq., the District Court was without jurisdiction to try the issue presented by the indictment. The statute contains no such limitation, and no authority is cited by appellant which so holds. The authorities relied upon by him, such as Kurtz v. Moffitt, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458, United States ex rel. Feld v. Bullard, 2 Cir., 290 F. 704 and Crouch v. United States, 9 Cir., 13 F.2d 348, hold that when a person in the military service violates the Articles of War the military courts have exclusive jurisdiction of the offense. From this it is argued that since Congress has dealt with desertion as a military crime it is triable by court martial only and not by the civil tribunals. That general principle is not disputed. However, in the present case the appellant is neither a person in the military service nor is he being tried for desertion or any other violation of the Articles of War. He is a civilian being tried for a specific statutory crime made such by Act of Congress. Appellant's reliance upon the general rule of criminal law that a person can not be guilty as an accessory to a crime until the crime itself has been established fails for the reason that appellant was not tried as an accessory. The crime of accessory before the fact, well recognized at

common law in state procedure, is not recognized in the trial of criminal offenses in the federal court. § 550, Title 18 U.S.C.A.; Kaufman v. United States, 2 Cir., 212 F. 613, 616, 617, Ann.Cas.1916C, 466; Morei v. United States, 6 Cir., 127 F.2d 827, 830. There are no common law offenses against the United States. United States v. Hudson, 7 Cranch 32, 3 L.Ed. 259; United States v. Britton, 108 U.S. 199, 206, 2 S.Ct. 531, 27 L.Ed. 698; Jones v. United States, 137 U.S. 202, 211, 11 S.Ct. 80, 34 L.Ed. 691. The appellant was charged with violating the provisions of a specific federal statute, which renders inapplicable the general principles present in a trial in a state court against a party as an accessory before the fact. In federal criminal jurisdiction it is not necessary that the principal be first convicted before bringing to trial one charged with aiding and abetting. Kaufman v. United States, supra. We find nothing in the statute or in the cases which prevents the District Court from proceeding in this case in the same manner as it proceeds in the trial of any other case involving an offense made such by federal statute. It is true that the Government has the burden of proving, among other facts, the necessary fact that the soldier involved was a deserter from the military service of the United States. But that issue of fact, as well as all other disputed facts, can be presented to the jury and decided by its verdict. Although the question was not directly involved in the case, such procedure was apparently approved by the Circuit Court of Appeals for the Second Circuit in Firpo v. United States, 261 F. 850, 852.

■ Appellant's final contention is that the trial court erred in overruling his motions for a finding of not guilty, in that the evidence failed to prove beyond a reasonable doubt the commission of the alleged offense. In passing on this question this Court must consider the evidence most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. Although the evidence is conflicting in some respects, yet the following review of testimony favorable to the Government is sufficient to show that the findings of the trial judge were fully supported by the evidence.

■ The soldier White worked for the appellant at his place of business, Hub Auto Parts in Pontiac, Michigan, before he was inducted into the United States Army on July 9, 1942. On August 15, 1943 he was granted a 15-day furlough and returned to the home of a friend, Bill Marotz, VanDyke, Michigan, a small community on the outskirts of Pontiac. During this furlough he did some work at the Hub Auto Parts. During the latter part of the furlough he became sick and was sent to the United States Army Hospital at Selfridge Field, Michigan. After remaining in the hospital for a week he was released and instructed to report to Camp Maxey, Texas. Instead he returned to the home of Bill Marotz in VanDyke where he remained for approximately three weeks. He was there arrested by officers of the State police who surrendered him to the Pontiac police who held him for one week before he was delivered into the custody of the Military Police. The Military Police then took him from Pontiac to Detroit and on October 6, 1943 placed him on a train to return to camp. He remained on the train until it reached Chicago, where he got off and hitch-hiked back to his friend's home in VanDyke. Shortly thereafter he discarded his Army uniform, moved to Pontiac, and in the latter part of October, 1943, obtained a job from the appellant. Although he did not tell appellant directly that he had been discharged from the Army he did tell people in appellant's presence that he had been discharged. He continued to work for the appellant until arrested by Pontiac police officers on February 23, 1944. White testified that he did not intend to return to the Army unless he was picked up. The contention that White was merely AWOL (Absent Without Leave) and not a deserter is not sustained by the foregoing facts. Such facts show without question that White's separation from the service was not merely a temporary extension of his furlough, but was a separation made pursuant to a settled intention to remain away indefinitely unless compelled to return. The evidence is equally as strong that appellant knew White was a deserter and assisted him in continuing his desertion. On several occasions the appellant threatened to turn White into the Army if he didn't come to work on time. The appellant met White one night on a day when he hadn't reported for work, called him aside and told him he was going to turn him over to the sheriff for being a deserter from the Army. While he was working for the appellant detectives on two or three occasions came

to appellant's place of business and talked with appellant. Appellant later told White that they were Pontiac police and were looking for him. At the trial White identified two of the police officers. A man by the name of Olney Burden worked for the appellant beginning December 3, 1943. Burden learned that White was not discharged from the Army and on several occasions discussed that fact with the appellant urging him to send him away before he got in trouble. Appellant's answer to this was to the effect that he was acquainted in town and could help White if he got in trouble. Burke Teel, a detective with the Pontiac Police Department, and Gilbert Brown, a sergeant with the Pontiac Police Department, went to the Hub Auto Parts on January 8, 1944, following information received from Detroit, and told appellant that they were looking for a deserter by the name of Alex White. Appellant told the officers that White might be at the Superior Glass Company at Detroit or might be at Bill Marotz's in Van-Dyke. On January 19, 1944, Teel made a second visit to the Hub Auto Parts and told the appellant that White was still a deserter and the Police Department had information that he was working there. Appellant replied that White wasn't there that day. Harry Engleby and Alf Strand, police officers of Pontiac, visited the Hub Auto Parts on February 21, 1944, contacted the appellant and told him they were looking for Alex White, who was a deserter from the United States Army, and who according to information received was working for the appellant. Appellant replied that White was not there. During the conversation a man came in from the outside and when the officers inquired who he was appellant answered "Cassidy." These officers testified that "Cassidy" was the same person as Alex White whom they arrested two days later. Wilma Tabor, a young girl of 19 who started keeping company with Alex White in December, 1943, testified that she accused White quite frequently of being a deserter from the Army, and that he would not answer one way or another; that she called White at the Hub Auto Parts on the day following his arrest and talked with the appellant who told her that White had been arrested, that he had done all he could for him, that he had told the police that White was a man by the name of Cassidy and that it wasn't his fault that he was picked up. Such evidence is more than sufficient to sustain the trial court's finding that the appellant knew White was a deserter and was assisting him in continuing his desertion.

The judgment of the District Court is affirmed.