**CATANEO v. UNITED STATES.**

**MAGLIANO v. SAME (two cases).**

**Nos. 5733, 5735, 5736.**

Circuit Court of Appeals, Fourth Circuit.
April 28, 1948.

John Henry Lewin, of Baltimore, Md. (J. Crossan Cooper, Jr., of Baltimore, Md., on the brief), for appellant Cataneo.

Paul Berman, of Baltimore, Md. (Robert R. Carman, Sigmund Levin and Theodore B. Berman, all of Baltimore, Md., on the brief), for appellant Magliano.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

In the United States District Court for the District of Maryland, John Cataneo, Benjamin Magliano and Vincent Drecchio were indicted, tried before a jury, convicted and sentenced for violation of 50 U.S.C.A. Appendix, § 311, which reads, in part, as follows:

"* * * any person who shall knowingly make, or be a party to the making of, any false statement or certificate as to the fitness or unfitness or liability or nonliability of himself or any other person for service under the provisions of this Act, or rules, regulations, or directions made pursuant thereto, or who otherwise evades registration or service in the land or naval forces or any of the requirements of this Act, or who knowingly counsels, aids, or abets another to evade registration or service in the land or naval forces or any of the requirements of this Act, or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect to perform any duty required of him under or in the execution of this Act, or rules or regulations made pursuant to this Act, * * * or conspire to do so, shall, upon conviction in the district court of the United States having jurisdiction thereof, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *."

These defendants were tried on two indictments. One indictment (in two counts) charged Magliano and Drecchio with making and causing to be made false statements in affidavits to Selective Service Form 41-A (Occupational Deferment) submitted by the American Ship Cleaning Com-

pany on behalf of Magliano. The other indictment charged Cataneo and Magliano with making and causing to be made false statements in a letter to the Local Draft Board on behalf of Magliano. As a result of this letter and Selective Service Form 42-A, Magliano was placed in a deferred classification. Over strenuous objections, the indictments were consolidated for trial. Drecchio did not appeal but Cataneo and Magliano have appealed to us.

As will subsequently appear, the appeals of Magliano and Cataneo have much in common; in some respects, however, the two appeals differ. We take up first the appeal of Cataneo.

The contention of Cataneo which merits our most serious attention is that prejudicial error was committed when he was joined with Magliano in indictment No. 20741, and when the trial court consolidated for common trial this indictment with indictment No. 20740 against Magliano and Drecchio.

We quote the apposite Rules of Criminal Procedure, 18 U.S.C.A. following section 687:

"Rule 8. Joinder of Offenses and of Defendants

"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

"Rule 13. Trial Together of Indictments or Informations

"The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."

"Rule 14. Relief from Prejudicial Joinder

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

It will be noted that Rule 8(a) permits the *joinder of two or more offenses* in the same indictment when the *offenses* "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Rule 8(b) permits the *joinder of two or more defendants* in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Rule 13 throws us back to Rule 8 by permitting the court to "order two or more indictments or informations or both to be tried together if the *offenses*, and the *defendants* if there is more than one, could have been joined in a single indictment or information." (Italics ours.) Then under Rule 14, relief from prejudicial joinder may be granted by the court "If it appears that a defendant or the government is prejudiced by a joinder of *offenses* or of *defendants* in an indictment or information or by such joinder for trial together." (Italics ours.)

For our purposes, the key-word here seems to be "transaction." This is not a technical term, nor is it a word of art. It has been variously defined and applied in numerous cases arising under the old Federal Equity Rules and in Code Pleading in connection with the joinder of causes of action and the permissibility of interposing counterclaims. Oft-quoted is the remark (under Equity Rule 30) of Mr. Justice Sutherland, in Moore v. New York Cotton Ex-

change, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, 45 A.L.R., 1370:

" 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."

Clark on Code Pleading, page 309, thinks the word should be given a broad meaning "to carry out what all procedural rules are designed to accomplish, namely, convenience and efficiency in trials." See, also, Phillips on Code Pleading, 2d Ed., § 312.

■ Under the rules before us, an interpretation of the word "transaction" frequently involves the balancing of conflicting interests: (1) speed, efficiency and convenience in the functioning of the federal judicial machinery; against (2) the right of the accused to a fair trial, without any substantial prejudice to that right occasioned by the joinder of offenses and/or defendants.

■ There is in reality one "transaction" here—the draft deferment of Magliano. All of the criminal activities alleged on the part of Cataneo, Drecchio and Magliano (and, according to the jury's verdict, proved) relate to, and are logically and intimately connected together with, this transaction. Here there is one employer, one draftee, one Local Board. The deferment of Magliano is the goal of all the activities herein alleged, namely—the making of the false affidavits by Drecchio, the writing of the letter containing the false statements by Cataneo, and the procurement and use of these documents by Magliano. A fortiori, may these criminal activities be included together under the categories "two or more acts or transactions connected together or constituting parts of a common scheme or plan" (Rule 8(a) and "same series of acts or transactions constituting an offense or offenses."

No case precisely in point, or even strikingly similar to the instant cases has been cited to us. In the cases stressed by appellants we find nothing directly contrary to the decision we have reached. See, McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355; Caringella v. United States, 7 Cir., 78 F.2d 563; Zedd v. United States, 4 Cir., 11 F.2d 96; Coco v. United States, 8 Cir., 289 F. 33; United States v. Decker, D.C., 51 F.Supp. 20. And see, where consolidation was permitted, the opinion of Circuit Judge Learned Hand in United States v. Gottfried, 2 Cir., 165 F.2d 360; the opinion of Circuit Judge Clark in United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631; and the opinion of District Judge Byers in United States v. Needleman, D.C., 6 F.R.D. 205

■ When consolidation is permissible under the formal requirements of Rules 8 and 13, Federal Rules of Criminal Procedure, the question of severance or common trial is vested under Rule 14 in the sound discretion of the trial judge and his decision will be reversed on appeal only upon a clear abuse of that discretion. We find no such abuse here, in spite of Cataneo's contention that the confession of Drecchio alone should have compelled a severance. See United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631, 635; United States v. Lotsch, 2 Cir., 102 F.2d 35, certiorari denied 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500; Jarvis v. United States, 1 Cir., 90 F.2d 243, certiorari denied 302 U.S. 705, 58 S.Ct. 25, 82 L.Ed. 544. Compare, Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; United States v. Lekacos, 2 Cir., 151 F.2d 170.

■ Cataneo next objects to numerous rulings of the District Judge on the admissibility of evidence. The chief contention here concerns the admission of numerous bits of evidence as to circumstances and events subsequent to the Cataneo letter of November 2, 1943, upon which letter the indictment of Cataneo was based. This evidence showed absences of Magliano from work at the American Ship Cleaning Company, absences so many and some so extended, that they strongly tended to prove that Magliano's employment at the Ship Cleaning Company lacked reality and substance and was a fake employment for the sole purpose of securing deferment from the draft.

Whether this employment of Magliano was real or was a subterfuge is the basic question in all these cases. It is, of course,

possible (but not highly probable) that when Cataneo's letter was written Magliano was a bona fide employee of the Ship Cleaning Company (so that the statements in Cataneo's letter were true) and that later (after the Cataneo letter) Magliano became for the first time a pseudo employee.

We think, though, that the situation as to Magliano after the Cataneo letter had probative force as to the facts of Magliano's employment before the letter. The weight of this evidence, of course, was to be determined by the jury. When the status of a person or a state of affairs is proved to have existed at a particular time, the continuance of this status or relationship is presumed. 9 Wigmore, Evidence, § 2530(3d Ed.1940) There was ample reason here for the belief that Magliano's employment was the same both before and after the Cataneo letter. No evidence to the contrary was introduced.

Courts are prone to admit relevant evidence of this kind in order to give the jury a complete overall picture of the entire situation. See Gormley v. United States, 4 Cir., 167 F.2d 454. In that case, we said:

"It is alleged that this evidence was irrelevant to the actual crime charged and tended to prejudice the minds of the jurors against the defendant. We think this evidence was admissible in order to give the jury a full picture of the whole transaction.

"Whether a particular circumstance is so closely interwoven with the primary deed as to constitute a piece in the pattern of the episode in its entirety, hence necessary to set off the charge on trial in proper perspective, must be determined in the light of the particular facts of each case. Alderman v. United States, 5 Cir., 31 F.2d 499."

It is contended that the trial judge's charge to the jury included serious and prejudicial errors of both omission and commission. Particular emphasis is laid by Cataneo's counsel on the alleged failure of the trial judge to instruct adequately that the confession of Drecchio could not be used against Cataneo; also the failure of the instructions to differentiate clearly between the charges against Cataneo, on the one hand, and the charges against Magliano and Drecchio, on the other hand. We think these objections relate to form rather than substance. It was, of course, not incumbent upon the trial court to instruct the jury in the precise form requested by counsel as long as the instructions fairly covered the points raised by the evidence.

A careful reading of the judge's charge as a whole convinces us that the case as to Cataneo was fairly presented to the jury and that this charge contained no error which justifies a reversal. Thus the trial judge expressly charged the jury:

"In addition to that, there has been introduced before you a statement by the other defendant, Drecchio, made to the Federal Bureau of Investigation agents. I instruct you that those statements, because made out of the presence of Magliano and Cataneo, are not in any sense to be considered as evidence against them."

The jury was also recalled and was again told: "The Drecchio statement was only to be used with respect to him, and not to be considered with respect to the others. And the same applies to Magliano's statement." The charge here does not come within the strictures indicated in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. Cf. Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248.

We find less merit in the appeal of Magliano than in the appeal of Cataneo. Magliano was included in both indictments, in one with Cataneo, in the other with Drecchio. Magliano was the draftee and, by securing draft deferment on the strength of the Cataneo letter and the Drecchio affidavits, was the beneficiary of all the criminal acts herein alleged.

Thus, what has been above said as to the consolidation of the indictments and the common trial in connection with Cataneo, applies with added force to Magliano. As to Magliano (whatever may be the situation as to Cataneo), the evidence as to his frequent and extended absences from his job at the Ship Cleaning Company, his trips to California and New York, the Coast Guard pass, and his many visits to the Turkish bath, was clearly relevant. Again, the weight of all these bits of evidence was for jury determination.

■ A careful study of the record compels the view that there was ample evidence here to take to the jury the question of Magliano's procurement of the Cataneo letter and the Drecchio affidavits and Magliano's knowledge of the falsity of the statements as to the real nature of his employment with the Ship Cleaning Company. No presumption against Magliano can, of course, be attributed to his failure to take the stand. And the burden of proof was on the Government. We note, however, that though the real facts here were peculiarly in Magliano's knowledge and susceptible of proof by numerous persons other than Magliano, yet the evidence as to what he actually did in his supposedly bona-fide job as foreman for the Ship Cleaning Company was very thin and exceedingly tenuous.

Magliano's objections to the judge's charge were more numerous than those of Cataneo but had less merit. And it is even more obvious that any formal inaccuracy which this charge may have possessed was less prejudicial to Magliano than to Cataneo.

Both Cataneo and Magliano stress the fact that even if it be admitted that no single one of the alleged errors in the District Judge's conduct of these cases constituted sufficient ground in itself for a reversal, yet the cumulative effect of them all was to create an atmosphere that was utterly unfair, and highly prejudicial to both Cataneo and Magliano. Counsel for Magliano, indeed, went even further to claim that the trial judge virtually conveyed to the jury the idea that the burden was upon all of the defendants here to prove their innocence. We find no merit in this contention.

Magliano was primarily a prize-fight promoter and tavern-keeper. He was several times before the Local Draft Board and often manifested a desire not to be drafted, particularly in the light of his family status and the pregnancy of his wife. He and Cataneo were personal friends and Magliano sometimes gave Cataneo tips on the probable outcome of prize-fights. Cataneo was the active head of the American Ship Cleaning Company, engaged largely in work essential to the war effort. He alone had power to hire foremen and Magliano was hired, and carried on the pay rolls of the Company, in that capacity. Thus Cataneo was in a peculiar position to know the truth or falsity of the statements contained in his letter. This letter was delivered to the Local Draft Board by Magliano for the sole purpose of procuring Magliano's deferment from the draft and it successfully achieved that result.

We find no reversible error in these cases, and the judgments of the District Court as to both Cataneo and Magliano are, accordingly, affirmed.

Affirmed.