**UNITED STATES v. LEMBO.**

No. 10009.

United States Court of Appeals Third Circuit.

Argued Oct. 10, 1949.

Decided Sept. 19, 1950.

Kalodner, Circuit Judge, dissented.

Jacob Kossman, Philadelphia, Pa., for appellant.

Fred I. Noch, Philadelphia, Pa., (Gerald A. Gleeson, United States Attorney, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

Defendant was indicted for knowingly failing to do an act required of him under the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 301 et seq., and the rules and regulations pursuant thereto. There were two counts in the indictment, the first of which charged defendant, and the second charged one Aleli. The counts were vaguely interrelated, but the defendants were not charged jointly. On conviction of both, an appeal was taken to this Court, which reversed the cause and discharged Aleli on the ground that he was not the employer and was therefore under no duty to report the layoff of Lembo and remanded Lembo. United States v. Aleli and United States v. Lembo, 3 Cir., 170 F.2d 18. There is no indication that the unparalleled procedure of an indictment charging defendants, not jointly but each separately in different counts, was called to the attention of the Appellate Court.[1]

---

1. McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355. Neither Rule 8, Rules of Criminal Procedure, 18 U.S.C.A., nor the current interpretation thereof, permit stringing together charges of different crimes by different persons in separate counts of one indictment. Cataneo v. United States, 4 Cir., 167 F.2d 820, distinguishes that situation.

Upon remand, there was a motion to dismiss the indictment. The duplicitous nature and confusing verbiage of Count I, which was commented upon by the Trial Judge here, was caused largely by the necessity for its interdependence upon Count II charging Aleli.[2] This motion was denied at the opening of the trial. The cause was tried before the Judge, sitting without a jury. The Court found that defendant was not guilty of preparing an application for deferment or of asking for deferment. The Court also found defendant was not guilty of the charge that he was not a full time employee at the time charged in the indictment up to October 6, 1944. But the Court found that he was guilty "of that part of the indictment which

2. "Indictment

"Count I. The Grand Jury Charges:.

"From on or about the 22d day of June, 1944, down to and including the 23rd day of February, 1945, Joseph John Lembo, Jr., one of the above-named defendants, being a registrant of Local Draft Board No. 46, in the City and County of Philadelphia, did knowingly fail and neglect to perform a duty required of him under the provisions of the Selective Training and Service Act of September 16, 1940, as amended, and the rules and regulations made pursuant thereto, by failing to report to his Selective Service Board, in writing, or otherwise, certain facts which might have resulted in the said defendant being placed in a different classification than that in which he was placed during the aforesaid period, the said facts being that he, the said defendant was not a full-time regularly employed workman of Stout's 69th St. Service, Inc., 228 South 69th Street, Upper Darby, Pennsylvania, averaging 56 hours per week, as was alleged in an Occupational Classification Request, Form 42-A, for deferment dated April 7, 1944, submitted by the said Company to the aforementioned Local Draft Board, No. 46, as a result of which said Form 42-A, the defendant was classified II-B, that he was chronically absent from said employment having not been employed by the said Stout's 69th St. Service, Inc., from October 6, 1944, to January 25, 1945, the said defendant at all times well knowing that the classification which he then and there enjoyed was given him as a result of the said Stout's 69th St. Service, Inc., representing and certifying to the said Local Draft Board No. 46, of the City and County of Philadelphia, that he, the said defendant, during the period June 22, 1944, down to and including February 23, 1945, was a full-time regularly employed workman working 56 hours a week, all of which the defendant then and there well knew to be false and fraudulent, in violation of Section 626.1-b, of the rules and regulations under the Selective Training and Service Act of September 16, 1940, as amended.

"Count II. The Grand Jury further Charges:

"From on or about the 22d day of June, 1944, down to and including the 23rd day of February, 1945, in the Eastern District of Pennsylvania, Louis Anthony Aleli, one of the above-named defendants, did knowingly fail and neglect to perform a duty required of him under the provisions of the Selective Training and Service Act, of 1940, as amended, and the rules and regulations and directions made and issued pursuant thereto, having presented and caused to be presented June 22, 1944, an Occupational Classification Request, Form 42-A to Local Draft Board, No. 46, in the City and County of Philadelphia, for one Joseph John Lembo, Jr., a registrant of said Local Draft Board, alleging that the said Joseph John Lembo, Jr., was a necessary employee of Stout's 69th St. Service, Inc., and that the said Stout's 69th St. Service, Inc., was engaged in essential war work, as a result of which, the said Joseph John Lembo, Jr. received a classification of II-B, which deferred him from service in the Armed Forces of the United States, the said Louis Anthony Aleli, did knowingly fail and neglect in writing, or otherwise, to notify Local Draft Board No. 46, in the said City and County of Philadelphia, of the change of status which might have resulted in the said Joseph John Lembo, Jr., being placed in a different classification than that in which he was placed during the aforesaid period, the facts being, that the said Joseph John Lembo, Jr., was not regularly employed by Stout's 69th St. Service, Inc., as heretofore represented, all of which the said Louis Anthony Aleli then and there well knew, by reason of which said failure to so notify the Local Draft Board, the said defendant did obtain the unlawful deferment of the said Joseph John Lembo, Jr., from service in the Armed Forces of the United States, in violation of Section 626.1-b, made pursuant to the Selective Training and Service Act of September 16, 1940, as amended."

says that from October 6, 1944, to January 25, 1945, that he knew that the classification he then and there enjoyed was given him as a result of his being employed by Stout's 69th Street Service, and that he failed to notify the draft board of that change, * * * a fact that * * * would have changed his classification, * * *."

The elements of the charge of Count I of the indictment are distorted by the necessity of nexus with the charge against Aleli and are that defendant knew his draft status depended upon the certification by Stout's that he was a full time employee from June 22, 1944, to February 23, 1945, which certification, as he well knew, was false and fraudulent, and he failed to notify the Board that he was not a full time employee at 56 hours a week, but was chronically absent during all that period of time. There is a clause which suggests that he was not employed at all at Stout's from October 6, 1944, to January 25, 1945, but the charge of the indictment is not that he failed to tell the Board of this fact, but only of the alleged fact that he was not employed full time but was chronically absent during the whole period. It is also charged that he was accessory after the fact to a false and fictitious certification by Aleli.

The charge as laid was not proved. The Affidavit—Occupational Classification, filled out by Aleli in behalf of Stout's, the employer, on April 7, 1944, was the only document of record which in any way appertained to the situation on October 6, 1944, and from there on until the filing of another like affidavit on March 3, 1945. The part of the April 7 affidavit relating to employment is:

"Date employed Aug. 23, 1943 Date entered present job Aug. 23, 1943
Average weekly rate of pay $65.00
"Average hours worked per week 56"

This affidavit was true on its face. The defendant could not know it was false and fraudulent, because it was not. A similar statement as to hours worked, salary and date of employment, made upon February 27, 1945, was filed with the Board March 3, 1945, as above noted, but this falls beyond the limit of the indictment. Defendant could not know therefore that there was on file from October 6, 1944, to February 23, 1945, any representation or certification as to the work of defendant at Stout's between June 22, 1944, and February 23, 1945, in view of these facts. The Court found that defendant did not participate in filing of any statements as to the employment of the defendant, but that all this was done by Aleli in behalf of Stout's without participation of defendant.

Thus the Trial Judge held the indictment attempted to state two different crimes and was duplicitous. However, there was an attempt upon the part of the Court to cure this defect by finding unproved certain allegations of the indictment and finding the defendant guilty of another portion thereof only. The allegations of knowledge of and participation in the filing of a false and fraudulent certification of full employment without layoff during the whole period were essential for joinder of this count [3] to that which charged Aleli, and proof thereof was vital to conviction of defendant on Count I. It is hornbook law that all material allegations of an indictment must be proved.

The vice of this indictment, however, was failure to state a crime in definite terms so that the accused would know with what he was charged. The failure of the indictment in this regard was highlighted by a dramatic incident. During the final argument, the Trial Judge asked the Assistant United States Attorney upon what theory the government was proceeding. The Assistant United States Attorney then outlined the basis upon which the Trial Court finally founded judgment. The Trial Judge then pointed out the confusion caused by the unsatisfactory indictment, saying, "Well, that was not generally understood during the trial of this case." If

---

3. Rule 8, Rules of Criminal Procedure. It was necessary for joinder that Lembo participate in the same series of acts or transactions "constituting an offense or offenses."

the Court was so misled at this stage as to the indictment, fairness to the defendant requires a different result.

The Court also found that the government failed to prove that defendant was not a full time employee from June 22, 1944, to February 23, 1945, and failed to prove that he was chronically absent from the employment. This was the gist of the charge. The only fact proved, which might have had pertinency under a proper indictment, was that defendant was laid off from October 6, 1944, to some time in January, 1945.

The indictment would then have been sufficient if it had set out that between October 6, 1944, and February 23, 1945, defendant knowingly failed to perform a duty imposed upon him by the Selective Training and Service Act, and rules and regulations adopted pursuant thereto, in that, knowing that his classification depended upon continuous full time employment without temporary layoff at Stout's and knowing that he had been discharged by Stout's on October 6, 1944, he wilfully [4] failed to notify the local Board of the fact of discharge within 10 days from that date. This sentence contains the substance of a valid charge. See United States v. Peskin, 3 Cir., 173 F.2d 97.

However, even this proper charge was not proven. It was not shown that defendant knew that continuous or uninterrupted employment without layoff was essential to continued deferment from and after October 6, 1944. No Board member was asked this exact question. No one testified that a layoff of that length, due to a slackening of war orders, would have had an influence on reclassification. The implication is that the matter necessarily would have been referred to the State Board. The evidence in this respect is apparently different from that on the former appeal. United States v. Aleli and United States v. Lembo, 3 Cir., 170 F.2d 18. It results that the findings on which defendant was held guilty do not constitute a crime and that sufficient allegations were not made in the indictment to advise defendant of the crime of which he was convicted.[5]

The praiseworthy effort of the learned Trial Judge, in attempting to cure the duplicity and inadequacy of the indictment by a fair trial covering the entire situation and a finding of not guilty as to portions of the indictment, cannot establish due process [6] where the indictment failed to charge the crime upon which the conviction was based.

Reversed and remanded with directions to dismiss the indictment.

BIGGS, Chief Judge (concurring).

I concur in the view expressed by Judge FEE that the indictment must be dismissed. The grounds for my conclusion, however, are somewhat different from those expressed by him.

Count 1 of the indictment, the only count attempting to charge Lembo with the commission of a crime or crimes, is so turgid as to be almost incomprehensible. Certainly it cannot be said fairly to apprise the defendant of the charges against him. One could stop here and properly order the indictment dismissed in view of Lembo's motion, made prior to trial, to dismiss for failure of the indictment to state sufficient facts to constitute an offense. Some further explanation is desirable, however, in view of the long history of this case.

It is very far from clear from the voluminous record under what theory the United States tried Lembo and this probably was due to the confusion cast by the

4. "Sec. 11 [of the Selective Training and Service Act] makes criminal a wilful failure to perform any duty required * * *." Estep v. United States, 327 U. S. 114, 119, 66 S.Ct. 423, 426, 90 L.Ed. 567.

5. Sutton v. United States, 5 Cir., 157 F. 2d 661, 666; Berger v. United States, 295 U.S. 78, 81–83, 55 S.Ct. 629, 79 L. Ed. 1314.

6. "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." Cole v. State of Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644.

indictment. No jury was employed but after the evidence was in, the court, delivering judgment, stated that, "* * * the indictment charges this man with two things; First, that he was not a full time, regularly employed workman, having been placed in that classification, and secondly, that he failed to notify the draft board that from October 6, 1944, to January 25, 1945, he was no longer employed there [at Stout's] in war-time essential industry." I cannot put this interpretation on the indictment. It seems to charge Lembo with a crime unknown to the Act and to the Regulations, viz., with enjoying a deferred classification when he was not entitled to it as a result of an Occupational Classification Request (Form 42-A) executed by his employer, Stout's. It is notable that the reference to Section 626.1(b) [1] of the Regulations is at the end of the indictment and that no "charging words" follow it. These may have been omitted by inadvertence. It was probably the intention of the draftsman of the indictment to charge Lembo with failing to report to the local board a fact, a change in employment status, which might have resulted in his reclassification. But an indictment must be tested by what it alleges; not by what the draftsman intended to allege.

That part of the indictment which the trial court referred to as "First" probably does not charge any crime. That part of the indictment which the trial court referred to under the heading "secondly" does state a crime cognizable under the Act if the numerous clauses of qualification which immediately follow it be excluded. To excise these clauses, however, or such of them as would be necessary to render the indictment valid, would cause the court to exercise the functions of a grand jury and would constitute far more than a disregard of surplusage. The court below found Lembo guilty of what the indictment probably intended to charge, designated by the District Court as "sec-ondly". But it also found Lembo not guilty of the alleged crime which the trial court referred to under the heading, "First". In endeavoring to cure the obvious defects of the indictment the trial court in effect found Lembo both "guilty" and "not guilty" on the same count. This course cannot enjoy the sanction of law. The fault lies in the indictment which is so badly drawn and so obfuscated with charges that do not constitute crimes as to be unintelligible.

For these reasons I concur in the view that the indictment must be dismissed.

KALODNER, Circuit Judge (dissenting).

I cannot agree that the indictment herein is fatally defective.

Rule 12(b) (2) of the Federal Rules of Criminal Procedure specifically provides that "Defenses and objections based on defects in the * * * indictment * * * other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial." Duplicity is, I should think, a defect which comes within those necessary to be asserted prior to trial, and the failure to raise it seasonably results in preclusion from later advancement. Cf. Connors v. United States, 1895, 158 U.S. 408, 410–411, 15 S.Ct. 951, 39 L.Ed. 1033; Beauchamp v. United States, 6 Cir., 1946, 154 F.2d 413, 415, certiorari denied 329 U.S. 723, 67 S.Ct. 66, 91 L.Ed. 626. Moreover, it is not the defendant, but the Court of its own motion, who complains of duplicity; indeed, he has expressly disavowed [1] such a claim with respect to this indictment.

However closely duplicity is associated with the further asserted defect, that the indictment lacks clarity, it would seem that in this instance both difficulties arise primarily from the assumed contradictory statements of the learned trial judge concerning the guilt of the defendant. Rule 23(c) of the Federal Rules of Criminal

---

1. Regulation 626.1(b) provides: "Each classified registrant shall, within 10 days after it occurs, and any other person should, within 10 days after knowledge thereof, report to the local board in writing any fact that might result in such registrant being placed in a different classification."

1. Defendant's brief, page 31.

Procedure provides that in cases, such as this, tried without a jury, "* * .* the court shall make a general finding and shall in addition on request find the facts specially." The trial judge here rendered what amounts to an oral opinion in which he stated his conclusions on the record. I do not suppose it reversible error that he made specific findings,. albeit without request. The use of the terms "guilty" and "not guilty" as used. by the trial judge, should not lead to confusion. The finding of fact that the defendant did not participate in the preparation of Form 42A (and consequently it was not established that he was not a regularly employed employee), is not inconsistent with or repugnant to the additional finding of fact that the defendant did no work at all between October 6, 1944, and January 25, 1945. It can only be said of the findings that they attempted to cover the evidence in the case: The use of the term "not guilty" signifies no more than a factual finding in the defendant's favor; it certainly does not relate to the validity of the indictment.

Further, the charge of the indictment, while awkward, is nevertheless legally adequate. It is historically clear that the indictment serves three purposes, as a notice to the defendant, as a pleading in litigation, and as the basis for the determination of former acquittal or conviction. If it is sufficiently clear to discharge these functions then, in view of the modern distaste for dependence upon niceties of expression, it should not be dismissed merely because of obstensible ineptness in drafting. "Not readily stricken down are Indictments or Informations because of defects in draftsmanship. * * * the true inquiry is whether the substantial rights of the parties have been affected. The 'obvious requirements' are '(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.' * * * See also Hagner v. United States, 1932, 285 U.S. 427, 431; 52 S.Ct. 417, 419, 76 L.Ed. 861: 'The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded.'" United States v. Angelo, 3 Cir., 1946, 153 F.2d 247, 250. Accordingly, I assume that an indictment is not subject to dismissal for lack of clarity unless it would result in prejudicial harm.

Here, the offense specified in the indictment is that the defendant failed to notify his draft board of a change in status which may have brought about a different draft classification had it been known to the draft board. The indictment, it seems to me, is sufficiently specific to satisfy historical usage. Cf. Stassi v. United States, 5 Cir., 1946, 152 F.2d 581, certiorari denied 328 U.S. 842, 66 S.Ct. 1020, 90 L.Ed. 1617. If the defendant desired a further specification, he could have availed himself of a bill of particulars as provided in Rule 7(f), although it would appear that the inclusion of the specific facts in the indictment could only operate in the defendant's favor. And the finding of the court below that the defendant was not employed for a substantial and continuing period of time within the designation of the indictment is in support of the charge therein. Cf. United States v. Weiss, 2 Cir., 1947, 162 F.2d 447, certiorari denied 332 U.S. 767, 68 S.Ct. 76, 92 L.Ed. 352; United States v. Wain, 2 Cir., 1947, 162 F.2d 60, certiorari denied 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 349. But even were the indictment not so clear as to appease the precise mind, still I do not think it so badly constructed that the defendant might not have known of what he was accused or might not have been able to prepare his defense.

Moreover, an indictment which contains all the essential averments should not be dismissed so readily in the absence of a showing of harm, such as surprise at the evidence offered, particularly when the issue is raised for the first time after the verdict has been rendered. The testing ground then should be the practical consideration of whether harm actually resulted to the defendant, rather than what might have been if the point were raised before trial. As stated in Hagner v. Unit-

ed States, 1932, 285 U.S. 427, 433, 52 S.Ct. 417, 420, 76 L.Ed. 861, "The indictment in the particular complained of is loosely and inartificially drawn and is not to be commended, but, upon the record before us, and without deciding that the indictment would not have been open to some form of challenge at an earlier stage of the case, we are of opinion that after verdict it is not vulnerable to the attack here made upon it." In the case *sub judice*, the defendant did move prior to trial to dismiss the indictment for failure to state sufficient facts to constitute an offense, but at no time prior to the rendering of the judgment was the indictment attacked upon any ground resembling lack of clarity. Therefore, I should not think the indictment would be dismissed now unless it is so confused and unintelligible as to amount to a plain failure to state an offense, or as to have actually harmed the defendant in the preparation of his defense. I have already indicated that I do not believe this indictment failed to state sufficient facts to constitute an offense or to establish a basis for determining former jeopardy. Nor am I persuaded that the defendant was actually prejudiced in the trial of the case. It is quite evident on the record that the defendant was able to determine from the indictment the nature and extent of the charge against him and to prepare and present his defense. Nothing in the record suggests prejudicial harm because of the language of the indictment. In addition, the defendant is not on this appeal complaining of the indictment in this respect, but it is the Court of its own motion. Certainly the Court ought not to read the indictment more literally than the defendant himself and to dismiss it without a demonstration of prejudice to him in the trial of the case. With respect to complaints concerning the indictment after the verdict, every intendment should be indulged in support of the indictment, and no objection can be meritorious without a showing of prejudice. Cf. United States v. Beck, 7 Cir., 1941, 118 F.2d 178, 182, certiorari denied 313 U.S. 587, 61 S.Ct. 1121, 85 L.Ed. 1542.

For the reasons stated, I should not dismiss the indictment at this time. Whatever was unnecessarily included in the indictment is surplusage, which the defendant could have had stricken pursuant to Rule 7(d): "It is a settled proposition of law that an indictment is amended only when it is so altered to charge a different offense from that found by the grand jury." United States v. Krepper, 3 Cir., 1946, 159 F.2d 958, 970, certiorari denied 330 U.S. 824, 67 S.Ct. 865, 91 L.Ed. 1275.

Finally, I believe the record adequately supports the finding of guilt made by the trial judge, and therefore would affirm the judgment below. But even were the proof insufficient, I would not deem appropriate a judgment of acquittal, since on a new trial the government may well be able to make out its case. Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317.